IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

C5 CAPITAL LIMITED and
ANDRE PIENAAR

Applicants,                                Case No.: 1:24 MC 00010 TNM

For an Order Pursuant to 28 U.S.C. § 1782
Granting Leave to Obtain Discovery for Use
in Foreign Proceedings

**RESPONDENT STEIN MITCHELL BEATO & MISSNER LLP'S
OPPOSITION TO THE APPLICATION UNDER 28 U.S.C. § 1782**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

LEGAL STANDARDS ...................................................................................................................7

     A.    Framework of the Court's analysis under § 1782. ........................................................7

     B.    The mandatory statutory factors include that a proceeding be filed or reasonably contemplated.................................................................................................................9

ARGUMENT ................................................................................................................................10

     I.   Applicants' admitted fishing expedition fails to satisfy the mandatory statutory requirements for discovery under § 1782.....................................................................10

     II. While the Court need not consider the *Intel* factors, they counsel denying the application. ....................................................................................................14

     A.    The supposedly relevant information is obtainable in the U.K.....................................15

     B.    Applicants' request represents an undue burden on a non-party. .................................16

CONCLUSION ..............................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ayyash v. Crowe Horwath LLP*,
 2018 WL 2976017 (S.D.N.Y. June 13, 2018) ............................................................ 14

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
 798 F.3d 113 (2d Cir. 2015) ................................................................................ 9, 12, 13

*Gulf Inv. Corp.*,
 2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020) ...................................................... 9, 14

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of
Fortress Inv. Grp. LLC*,
 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ..................................................... 1, 9, 13

*In re Microsoft Corp.*,
 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ........................................................................ 15

* *In re of Lucille Holdings Pte. Ltd.*,
 2022 WL 1421816 (D.D.C. May 5, 2022) .......................................................... passim

*In re Sargeant*,
 278 F. Supp. 3d 814 (S.D.N.Y. 2017) ........................................................................ 14

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*,
 2016 WL 1071016 (E.D. Va. Mar. 17, 2016) ............................................................ 17

*In re Veiga*,
 746 F. Supp. 2d 8 (D.D.C. 2010) .................................................................... 8, 10, 11

* *Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004) ................................................................................................ 2, 8

* *Jiangsu Steamship Co. v. Success Superior Ltd.*,
 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ..................................................... 1, 10, 14

*MacDermid Printing Sols., L.L.C. v. E.I. Du Pont De Nemours & Co.*,
 2012 WL 734146 (M.D.N.C. Mar. 6, 2012) .............................................................. 17

*Schaaf v. SmithKline Beecham Corp.*,
 233 F.R.D. 451 (E.D.N.C. 2005) ............................................................................... 17

*Wyoming v. U.S. Dep't of Agric.*,
  208 F.R.D. 449 (D.D.C. 2002) ................................................................................ 17

**Statutes**

28 U.S.C. § 1782 ...................................................................................................... passim

**Other Authority**

*Nearly Toothless: Why the Speech Act Is Mostly Bark, with Little Bite*,
  40 Hofstra L. Rev. 235 (2011) ............................................................................... 16

## <u>INTRODUCTION</u>

Applicants' request for pre-litigation discovery, supposedly in aid of a hypothetical foreign proceeding that they have not filed for more than a year (and may never file) is an improper fishing expedition, plain and simple. Applicants obscure the relevant factual background, making numerous claims that veer from misleading to simply false. What is clear, however, is that they seek discovery from Stein Mitchell even though applicants don't know (1) whether they have claims, (2) what they are, or (3) which (if any) defendant to sue. That is not a proper use of discovery under 28 U.S.C. § 1782 (or the Federal Rules). Applicants' request thus fails as a matter of law and should be denied, for two independent reasons.

***First***, the law is clear that, to satisfy the statutory threshold for *potential* entitlement to discovery, a foreign proceeding must be "reasonably contemplated." Courts repeatedly affirm that "the statute is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings."[1] An assertion that the evidence is sought to assist a party in assessing *whether* to initiate a foreign action establishes that such action is unduly speculative as a matter of law and thus "plainly insufficient" to provide a concrete basis on which to allow discovery.[2] Yet applicants expressly admit that they seek evidence from Stein Mitchell to determine whether claims even exist and, if so, against whom. Thus, the application itself confesses to be nothing more than an effort to discover a way into a lawsuit, a project that § 1782 does not permit to pass through the statutory threshold.

***Second***, even if applicants reached the discretionary factors set forth by the United States

---

[1] *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015).

[2] *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015).

Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) – and they do not – the application fails here as well. "When the information sought in a section 1782 application is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome."[3] Applicants extended the undue burden one step further, and seek ***pre-suit*** discovery from a ***non-party*** of communications that would exist in the possession of the party they claim to intend to sue. The law is well settled that requests under § 1782 are governed by the normal limitations on civil discovery imposed by the Federal Rules. The idea that the Federal Rules allow plaintiffs to obtain (1) pre-suit discovery (2) from a non-party to (3) attempt to discover their way into (4) uncertain claims against (5) unknown defendants is frivolous.

The Court should deny the application.

## FACTUAL BACKGROUND

Respondent need not address much of the substance of applicants' factual recitation and limits the discussion below to (1) correcting applicants' misstatements bearing upon applicants' credibility, and (2) highlighting the factual concessions that warrant denial of the application.

Mr. Pienaar expends a considerable portion of the application bolstering his supposed credentials as "an honest and ethical businessman and philanthropist and man of integrity."[4] There are notable omissions in his account. For example, Mr. Pienaar's sworn declaration to the Court claims that he is a "U.K. citizen, domiciliary, and resident." ECF 1-3, ¶ 1. This claim is interesting because in corporate documents reflecting his status as a director in a mining operation – United

---

[3] *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *16 (D.D.C. May 5, 2022) (punctuation and citation omitted).
[4] Mem. at 3. *See also id.* at 4 and Pienaar Decl., ECF 1-3 ¶¶ 2-4.

Manganese of Kalahari – connected[5] to sanctioned Russian oligarch Viktor Vekselberg[6], Mr. Pienaar is listed as a resident of the "British Indian Ocean Territory." Ex. A, p. 8.  The Court may be aware – and may take judicial notice – of the fact that the British Indian Ocean Territory (consisting primarily of the island Diego Garcia) is a joint U.S. – U.K. military base,[7] and was reported by U.S. State Department officials to have been a black site for the detention and interrogation of CIA detainees.[8] An odd residence for a self-described "active and dedicated philanthropist" to be sure. Moreover, that document lists Mr. Pienaar's residential and mailing addresses as in Manama, Bahrain. Equally curious is Mr. Pienaar's association in this mining operation with Mr. Vekselberg, whose $90 million yacht was seized in a wave of DOJ actions against sanctioned Russian oligarch assets in conjunction with the Spanish government.[9]

Mr. Pienaar also omits from his self-serving, self-characterization lawsuits brought ***against*** him and/or his C5 entities by charitable entities,  namely the United States Institute for Peace[10] and an order of Catholic nuns.[11] In the former, Mr. Pienaar was sued to enforce charitable commitments and then, following settlement of that matter with millions of dollars in payments owed to the plaintiff, intervention by the Court was necessary to order compliance with the settlement agreement (including interest for what the Court called objectively delinquent payments). The

---

[5]        https://www.cnn.com/2023/07/28/africa/south-africa-russia-manganese-mine-anc-intl-cmd/index.html

[6] The Department of the Treasury designation regarding Mr. Vekselberg is available at https://home.treasury.gov/news/press-releases/sm0338.

[7] British Indian Ocean Territory, *available at*  https://www.biot.gov.io.

[8]        https://www.theguardian.com/world/2015/jan/30/cia-interrogation-diego-garcia-lawrence-wilkerson

[9]        https://www.justice.gov/opa/pr/90-million-yacht-sanctioned-russian-oligarch-viktor-vekselberg-seized-spain-request-united

[10] *See gen. Peacetech Labs vs. Andre Pienaar et al.*, 1:20-cv-00922-JDB in the United States District Court for the District of Columbia.

[11] *See gen. The Medaille Corporation vs. C5 Accelerate LLC, et al.*, Case No. 22002731, Circuit Court of Arlington County, Virginia.

latter suit involved C5's handling of millions of dollars invested by the nuns in Mr. Pienaar's businesses. Perhaps unsurprisingly, applicants are silent on these matters, which are certainly probative of whether Mr. Pienaar has in fact "worked hard for years to earn a reputation as a successful, ethical, and upstanding businessman." ECF 1-3, ¶ 4.

Turning to the facts directly relevant to the supposed claims at issue here, applicants reference a PowerPoint presentation provided to members of Congress, yet cite only two slides from that presentation. It is notable that they do not include the rest of the presentation, yet baselessly characterize the document as consisting of "debunked" allegations of corruption by C5 and Mr. Pienaar in connection with the DoD JEDI procurement. The notion that the slide deck's assertions regarding C5 and Mr. Pienaar have been "debunked" is demonstrably false. While applicants' mischaracterizations do not bear on the statutory or discretionary factors that govern the Court's determination, they are probative of applicants' credibility (or lack thereof) and thus Stein Mitchell addresses them briefly here. As applicants should know, but fail to disclose to the Court, the various government entities listed in applicants' brief (ECF 1.1 at 9) did not address C5's or Mr. Pienaar's conduct *whatsoever*. Indeed, the GAO, Court of Federal Claims, and Federal Circuit proceedings were narrow, bid protest matters that do not mention either Mr. Pienaar or C5 *a single time*. The DoD OIG Report similarly did not address C5's commercial relationships with Amazon Web Services, let alone did it "debunk" the information contained in the PowerPoint presentation, which consists largely of evidence uncovered from government documents and C5 corporate filings that post-date the DoD OIG Report *by years*.

The slides that applicants did include reference statements attributed to Mr. Daniel Freeman, a former managing director of C5. As the written correspondence between counsel for applicants and counsel for Mr. Freeman details, in 2022 applicants inquired of Mr. Freeman about

the statements attributed to him and he denied making them, through counsel, in writing, repeatedly. According to applicants, the last communication from Mr. Freeman's counsel to applicants' counsel occurred in November 2022. Thus, despite professing an active concern for the potential misuse of C5 confidential information and potential breaches of Mr. Freeman's agreements with C5 (Mem. at 2), applicants have not filed any legal claim against Mr. Freeman in the ***more than 14 months*** since last communicating with his counsel.

This admitted inaction appears in part driven by Mr. Freeman's having disclaimed the statements attributed to him and reaffirmed his compliance with his agreements. Applicants then present the Court with two competing hypotheticals, each of which depend on multiple blithe and unsupported assertions.

> Either Mr. Freeman is lying, in which case he is certain to have deleted any documents reflecting those statements, or another similarly situated C5 Capital employee or former employee—who would be subject to the same or substantially the same confidentiality provisions as Mr. Freeman—is in breach of his or her obligations to C5 Capital and defamed it and Mr. Pienaar and deceived or convinced Stein Mitchell and RosettiStarr to attribute his or her statements to Mr. Freeman.

Mem. at 11-12. Applicants further admit that, given the overlapping factual uncertainties implicit in these hypotheticals, at present applicants do not know whether they have any claim against Mr. Freeman and, if not, whether they have any claim against some unknown other party. Mem. at 12-13. Thus, the straightforward purpose of this application, ***by their own admission***, is to attempt to obtain facts that might give rise to as of yet uncertain claims (emphasis added and throughout unless otherwise indicated):

- "Accordingly, Stein Mitchell (and RosettiStarr) alone possess evidence and information that would confirm that Mr. Freeman made the statements they attributed to him…***or that will identify the actual person*** who made the statements …Either way, that evidence is necessary for Applicants to bring their U.K. (English) lawsuit against Mr. Freeman ***or*** that other person." Mem. at 2.

- "C5 Capital and Mr. Pienaar are preparing to file an action against Mr. Freeman (**or** the similarly-situated **but as-yet-unidentified** C5 Capital employee or former employee) for breach of contract **and/or** defamation in the Courts of England and Wales…" Mem. at 12.

- "In order to ensure that Applicants properly present their claims and bring them **against the correct defendant**, however, they need to obtain from Stein Mitchell (and RosettiStarr) copies of its communications from and to Mr. Freeman (**or** the similarly-situated C5 Capital employee or former employee whose statements were attributed to Mr. Freeman), which will provide evidence that those communications (including those in the Presentation and Freeman Interview Notes) **took place (or not) and with whom**." Mem. at 12.

- "[The discovery sought] would allow C5 Capital and Mr. Pienaar to properly address their forthcoming lawsuit in the Courts of England and Wales **against the correct defendant**." Mem. at 13.

Put another way, by applicants' own admission, there will be no foreign proceeding absent the granting of this application. Thus, contrary to applicants' repeated suggestion, there is no "forthcoming lawsuit in the Courts of England and Wales." There is, at most, a potential desire to explore a possible foreign proceeding if discovery here supports it. This is fatal to the application because "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *10 (emphasis in original) (citations and punctuation omitted).

As discussed more fully below, the Court need not accept applicants' bald assertion that a claim against Mr. Freeman, inchoate for more than a year following the only relevant facts applicants present, is for some reason now forthcoming.  Instead, the Court should conclude that the substantial time that has elapsed between the facts possibly giving rise to a potential claim, and the application, undermines that claim. Absent a reasonably contemplated claim, what now motivates this application? A much more recent development, much closer to this jurisdiction, offers a ready explanation. In September 2023, Mr. Pienaar sued an Associated Press journalist

*personally* for $10 million for alleged defamation, ostensibly for reporting efforts regarding a story that has not even been published.[12] In that suit, Mr. Pienaar claims that it was defamatory for this journalist to contact associates of Mr. Pienaar to discuss (in Mr. Pienaar's words) "financial irregularities." Ex. B, Complaint, at 1.

That defamation lawsuit against the Associated Press reporter was filed contemporaneously with the collapse of IronNet, a company C5 has funded since January 2023[13] and which presently faces shareholder class action claims for breach of fiduciary duty against the directors.[14] This is perhaps among the financial irregularities referenced in the reporting that suit seeks to squelch. Regardless, the timing of Mr. Pienaar's Virginia-based defamation suit against an Associated Press investigative reporter suggests that this application may be an attempt either to obtain discovery outside the purview of that matter or to send a message to Mr. Freeman or others—both impermissible purposes under § 1782.

## LEGAL STANDARDS

### A. Framework of the Court's analysis under § 1782.

Section 1782 provides, in relevant part: "The district court of the district in which a person resides or is found may order him to give his testimony or to produce a document or other thing

---

[12] *See gen. Andre Pienaar v. Alan Suderman*, Case No. CL23003390-00, Circuit Court of Chesterfield County, Virginia.

[13] https://www.businesswire.com/news/home/20230902610995/en/C5-Capital-and-Partners-Offer-IronNet-Inc.-Board-Continued-Financing-to-Enable-the-Restructuring-of-the-Company. ("C5 Capital, the specialist venture capital firm that invests in cybersecurity, space, and energy security, and its partners provided the Board of IronNet, Inc. with a term sheet to fund the restructuring of the company. In addition, C5 Capital funded IronNet, Inc. with $300,000.00 on August 29. On September 1, C5 Capital provided a $1M note for further bridge financing of the company. C5 Capital and its partners are the sole funders of IronNet, Inc. since January 2023. C5 Capital provided $15.176M of financing to IronNet, Inc. since January 2023.").

[14] *See gen. Matthew Whitfield v. LGL Systems Acquisition Holding Co. LLC*, Case No. 2023-1004 (Del. Ct. Ch.).

for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. …" 28 U.S.C. § 1782(a). "Pursuant to § 1782(a), district courts are authorized to order discovery in the United States for use in foreign proceedings in certain circumstances. The relevant inquiry proceeds in two stages: at the first stage, the district court considers whether it has the authority to grant the application; thereafter, the court considers whether it should exercise its discretion to do so." *In re Veiga*, 746 F. Supp. 2d 8, 16–17 (D.D.C. 2010).

"Before a federal court can order discovery under section 1782, the three requirements outlined in the statute must be met." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *8. "A district court has the authority to grant an application when […]: (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person. 28 U.S.C. § 1782(a)." *In re Veiga*, 746 F. Supp. 2d at 17.

"If the applicant satisfies these prerequisites, the district court then turns to the four factors articulated by the Supreme Court [in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)] to aid district courts in exercising their discretion: 1. Whether the person from whom discovery is sought is a participant in the foreign proceeding; 2. The nature of the foreign tribunal and the character of the proceedings; 3. Whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and 4. Whether the discovery sought is unduly intrusive or burdensome." *In re Veiga*, 746 F. Supp. 2d at 17 . "The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take precedence. These factors are merely designed to 'guide' a court

adjudicating a section 1782 discovery application." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *7 (citations omitted).

**B. The mandatory statutory factors include that a proceeding be filed or reasonably contemplated.**

"[C]ourts must assess the indicia of whether contemplated proceedings were within reasonable contemplation *at the time the application was filed*… .Such a prescription makes good sense. Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a). The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *10 (emphasis in original) (citations and punctuation omitted).

"Courts must embrace Congress' desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse. **The latter situation is not an appropriate one for a court to compel discovery**." *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (emphasis added).[15]

"Therefore, courts should be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made. Merely retaining counsel and discussing the possibility of initiating litigation is insufficient to show that a proceeding is within reasonable contemplation." *Gulf Inv. Corp.*, 2020 WL 7043502, at *3 (S.D.N.Y. Nov. 30, 2020) (punctuation and citation omitted). "[T]he statute is

---

[15] *Aff'd sub nom. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015).

not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings." *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015).

### C. The non-exclusive, discretionary factors enumerated by *Intel* include the normal protections from undue burden afforded under the Federal Rules.

"Generally speaking, the standards for discovery set out in the Federal Rules of Civil Procedure also apply when discovery is sought under § 1782(a)." *In re Veiga*, 746 F. Supp. 2d at 19. "When the information sought in a section 1782 application is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *16 (punctuation and citation omitted).

## <u>ARGUMENT</u>

Applicants admit that they are attempting to use the discovery sought here to determine whether they have a claim, and if so against whom. The Court therefore is without authority under § 1782 to grant the application. Moreover, the discretionary factors would also warrant denial because applicants have failed to show that the information they seek is unavailable in the foreign proceeding, and because pre-suit discovery of party documents from a non-party is unduly burdensome as a matter of law.

### I.   Applicants' admitted fishing expedition fails to satisfy the mandatory statutory requirements for discovery under § 1782.

A recent opinion by Magistrate Judge Harvey on nearly identical facts provides a detailed and persuasive analysis demonstrating that, under § 1782 and clear precedent, the application should be denied. *In re of Lucille Holdings Pte. Ltd.* involved an applicant that, like those here, sought discovery under § 1782 prior to having initiated a foreign action.  2022 WL 1421816 at *1.

Much like Mr. Pienaar and C5, the applicant there explained to the Court that without the requested documents it would be difficult to assess whether the viable claims existed, because information applicant believed was in respondent's possession "was central factually to [applicant's] proposed claims." *Id.* at *5.

The court first reiterated that "[b]efore a federal court can order discovery under section 1782, the three requirements outlined in the statute must be met." *Id* at *8. The court noted that "although the three requirements of section 1782 are not prerequisites that must be met for a federal court to have the constitutional power to address a section 1782 application, they nonetheless must be satisfied at the time the application is filed for a court to grant the application" and focused on the second requirement, namely that applicant "reasonably contemplated a foreign legal proceeding at the time it filed its application." *Id.*

The court denied the application. "[F]acts indicating that at the time the application was filed, the discovery was sought in order to determine whether litigation could or should be pursued are insufficient to meet the 'reasonable contemplation' standard." *Id.* at *13. In analysis that could be lifted wholesale and applied directly to the present application, the Court took applicant at its word regarding the impermissible  purposes for which it sought discovery:

> *[The applicant] did not know where, when, or even against whom the allegedly contemplated foreign proceedings would be brought*. More, the declaration explicitly states that whether this inchoate foreign proceeding will be brought is dependent "on whether [applicant] receives satisfactory responses to further inquiries or requests for relief." *Id.* That phrase is ambiguous. It could mean that the foreign proceeding turns on the information [applicant] receives from [Respondent]—a clear indication that, at the time the application was filed, [applicant] was searching for the factual basis for a claim.

*Id.* at *15. This is exactly how Mr. Pienaar and C5 have characterized their own application. They admit that they are "seeking discovery from [Respondent] in order to determine whether [they

have] a cause of action against [Freeman or another party]." *Id. **That is not a proper use of section 1782***." *Id* (emphasis added).

Applicants may point to the declaration provided by prospective English litigation counsel, proffering the vague (and avowedly conditional) claim that:

> C5 Capital Limited ("C5 Capital") and Andre Pienaar ("Mr. Pienaar") have retained my law firm and me to advise on and, ***as appropriate***, commence claim(s) against Daniel Freeman in England in either or both of defamation or breach of contract… C5 Capital and Mr. Pienaar have further expressed to me that ***if*** the discovery obtained pursuant to the Application demonstrates that someone other than Mr. Freeman made the statements attributed to him in the Presentation and Freeman Interview Notes, then they anticipate promptly proceeding, ***if so advised***, with English claims against that person. ECF 1-6, ¶ 2.

The *In Re Lucille* court cited persuasive authority from the Court of Appeals for the Second Circuit making clear that this is not enough. "[M]erely hiring counsel and discussing initiating litigation is not an objective showing that allegedly planned proceedings were within reasonable contemplation." *Id* at *13 (*citing Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015)). As with the declaration provided by Mr. Pienaar and C5, in *In re Lucille* "the declaration explicitly states that whether this inchoate foreign proceeding will be brought is dependent on whether [applicant] receives satisfactory responses to further inquiries or requests for relief." *Id* at *15. This is precisely what Mr. Pienaar's English litigation counsel informed the Court and this binding admission mandates denial of the application.

A review of the Second Circuit's affirmance in *Certain Funds* is also instructive.  There the trial court denied the application because it concluded that no foreign proceeding was reasonably contemplated, despite the applicant having hired counsel in pursuit of a professed claim. "Although the petitioners attest that they have retained counsel to investigate and prosecute their claims in the planned proceedings, the Court is not persuaded that this means that a dispositive ruling by a foreign tribunal is within reasonable contemplation." *In re Certain Funds, Accts., &/or*

*Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *7 (S.D.N.Y. July 9, 2014). Like Mr. Pienaar and C5, the applicant there could have, but had not, filed a foreign action in the intervening time and the *Certain Funds* court cited this lack of a filed proceeding as counseling denial. "Furthermore, the concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so." *Id.* So too here. Mr. Pienaar and C5 could have taken action between November 2022 and now in the U.K., but they have not, and thus the same pronounced concern for misuse of the § 1782 process exist here. Ultimately the *Certain Funds* trial court (as did this Court in *Lucille*) "guard[ed] against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse" because "[t]he latter situation is not an appropriate one for a court to compel discovery." *Id* at *6.

The Second Circuit embraced this analysis on appeal and affirmed, citing (among other factors) the substantial time that had elapsed between the facts supposedly giving rise to the potential claims and the § 1782 application.  "In light of the substantial length of time…we cannot say that the district court erred in determining that the anticipated proceedings were not within reasonable contemplation…" *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015). "[A]ll that [Mr. Pienaar and C5] allege[]…[is] that they ha[ve] retained counsel and [are] discussing the *possibility* of initiating litigation. Accordingly, at the time the evidence was sought in this case, the [Applicants] ha[ve] done little to make an objective showing that the planned proceedings [are] within reasonable contemplation."  *Id.*

Many other cases are in accord. The court in *In re Gulf Investment Corp.* reiterated that "courts should be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made." 2020

13

WL 7043502, at *3 (S.D.N.Y. Nov. 30, 2020) (citation omitted). There, like here, the applicant

submitted an affidavit from counsel affirming that "the Requested Discovery is being sought to

support potential claims that [applicant] is considering pursuing…" *Id*.  This was not enough:

> An assertion that the applicant plans to use the evidence it seeks to assess ***whether***
> to initiate actions underscores the mere speculativeness of the contemplated
> proceedings and is ***plainly insufficient*** to provide the Court with some concrete
> basis from which it can determine that the contemplated proceeding is more than
> just a twinkle in counsel's eye." *Id* at *4 (citation omitted)(emphasis added).

This "plainly insufficient" assertion is all applicants offer the Court here.

Indeed, in case after case where applicants put forth the same basis for § 1782 discovery

as C5 and Pienaar here – to assist in determining ***whether*** a claim exists and, if so against whom

– courts have held that the application fails the statutory threshold as a matter of law:

- "The only thing that the contemplated § 1782 discovery would assuredly be 'in aid' of is [applicant's] decision-making, and the statute is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings." *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015).

- "Nonetheless, the <u>potential</u> proceedings that [applicant] may (or may not) bring depending on what the discovery reveals are not within <u>reasonable</u> contemplation." *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (emphasis in original).

- "…[T]he Court is concerned that [applicant] is using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against Respondents." *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018).

This Court should reach the same result for the same reason and deny the application.

## II.  While the Court need not consider the *Intel* factors, they counsel denying the application.

The Court need not move on to consider the discretionary *Intel* factors, but such a review

would also warrant denial.

### A.  The supposedly relevant information is obtainable in the U.K.

The first *Intel* factor addresses situations where the discovery sought is unobtainable absent the aid of § 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 452 U.S. 241, 264 (2004). Courts applying the first *Intel* factor have held that, "[t]he relevant inquiry is whether the evidence is available to the foreign tribunal." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006). Applicants make no effort to explain how communications Mr. Freeman may have had are not available to applicants under U.K. law, even prior to their allegedly forthcoming claim against him. Indeed, it is notable that **nowhere** in the five-page declaration does applicants' English litigation counsel even address this first *Intel* factor, let alone disclaim that applicants could seek this information from Mr. Freeman in the U.K. A cursory review of the procedures governing disclosure in the U.K. reveals that applicants apparently *can* obtain this information from Mr. Freeman. Rule 31.16 of the U.K. Civil Procedure Rules ("Disclosure before proceedings start") authorize an English court to grant pre-action disclosure from a likely party to the proceedings.[16] Thus, the first *Intel* factor favors denial.

Applicants attempt to skirt this issue by noting that they would likely not be able to obtain discovery from Stein Mitchell in the English action. To be sure. But all they seek from Stein Mitchell is communications, if any, **with Mr. Freeman**. As addressed further below, seeking party documents from non-parties is presumptively unduly burdensome. But this is beside the point. The linchpin of the application is that Mr. Pienaar and C5 need discovery from Stein Mitchell to decide whether to sue Mr. Freeman. Apparently in U.K. courts they can seek discovery from Mr. Freeman

---

[16]    *See*    CPR    31.16    (Eng.),    https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part31#31.16.

to decide whether to sue Mr. Freeman. *Intel* weighs the foreign availability of discovery against the applicant. This Court should do so as well.[17]

It bears emphasis that standards for proving defamation in the U.K., in the absence of protections matching our First Amendment, are much lower than in the United States, as legal scholars describe.[18] In effect, Applicants seek to use the more permissive U.S. discovery rubric in support of more permissive U.K. defamation claims. Once again, pre-suit discovery is available in the U.K. and the courts of that jurisdiction should be applying their rules to substantive claims arising under U.K. law.

**B. Applicants' request represents an undue burden on a non-party.**

The fourth *Intel* factor—undue burden—also counsels denial here. *In re of Lucille Holdings Pte. Ltd.* is again instructive. "When the information sought in a section 1782 application is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." 2022 WL 1421816, at *16.

Courts routinely apply this principle in rejecting discovery from non-parties that is more easily obtainable from other sources, typically the parties themselves. In an analogous case outside the context of § 1782, the United States District Court for the Eastern District of Virginia rejected

---

[17] Applicants' bald and self-serving assertion that Mr. Freeman "is certain to have deleted any documents reflecting those statements" barely merits rebuttal. Applicants offer no authority for the novel premise that they are allowed to assume spoliation without a shred of evidence and then deploy that assumption to overcome the protections afforded to non-parties. This is not the law.

[18] "[T]he United Kingdom is recognized as one of the most plaintiff-friendly forums for defamation actions. This, along with the United Kingdom's civil procedure and jurisdiction law, creates an incentive for litigants to bring their libel actions in U.K. courts.[62] In striking contrast to U.S. libel law, the law of libel in the United Kingdom treats any statement that negatively affects an individual's reputation as presumptively defamatory." Elizabeth J. Elias, *Nearly Toothless: Why the Speech Act Is Mostly Bark, with Little Bite*, 40 Hofstra L. Rev. 235, 243 (2011).

a subpoena to a law firm for documents that the party would likely have. "There is no reason to burden a third party with discovery when the opposing party has all of the information requested." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016). In that case, the court rejected the argument advanced by applicants here, namely that their subjective belief that the party's recalcitrance or misconduct might frustrate discovery is enough to overcome the protections afforded to third parties. *Id* at *8 (rejecting petitioner's supposedly "serious concerns about its ability to obtain accurate, unfiltered information about the events and disclosures at issue" from the party.).

Many other cases reach the same result. *See, e.g., Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) ("[T]he discovery sought is obtainable from another source that is more convenient, less burdensome, and less expensive. Moreover, the discovery is 'unduly burdensome' considering the non-party status of the witnesses."); *MacDermid Printing Sols., L.L.C. v. E.I. Du Pont De Nemours & Co.*, 2012 WL 734146, at *3 (M.D.N.C. Mar. 6, 2012) ("[T]he availability of the relevant information from another, better source makes the burden on [Respondent] unwarranted in this case."); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) ("[A] court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.") (citation omitted).

Once again, applicants ignore the relevant analysis and instead deny there is any undue burden on Stein Mitchell based on the supposed narrowness of the requests. This misses the point. Requesting ***any*** information more easily obtained from a party is unduly burdensome to a non-party as a matter of law.  Moreover, as already noted above, courts find requests to non-parties for party documents unduly burdensome during discovery in an open matter, let alone pre-suit.

## <u>CONCLUSION</u>

Applicants effectively admit that they have embarked on a fishing expedition foreclosed by the very statute governing the application. For the reasons stated herein, the Court should deny the application.

Dated: February 22, 2024

Respectfully submitted,

/s/ *Robert B. Gilmore*
Robert B. Gilmore (D.C. Bar No. 492424)
Philip J. O'Beirne (D.C. Bar No. 1003436)
Stein Mitchell Beato & Missner LLP
2000 K Street, NW, Suite 600
Washington, DC  20005
(202)  737-7777
(202) 296-8312 (fax)
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Counsel for Stein Mitchell Beato & Missner LLP

18